## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **GEORGE E. DIXON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 3:19-CV-1677-G-BH** |
| | § | |
| **WELLS FARGO BANK, N.A., AS** | § | |
| **TRUSTEE FOR THE POOLING AND** | § | |
| **SERVICING AGREEMENT DATED AS** | § | |
| **OF APRIL 1, 2004, ASSET-BACKED** | § | |
| **SECURITIES CORPORATION HOME** | § | |
| **EQUITY LOAN TRUST 2004-HE2,** | § | |
| **ASSET-BACKED PASSTHROUGH** | § | |
| **CERTIFICATES, SERIES 2004-HE2 and** | § | |
| **OCWEN LOAN SERVICING, LLC,** | § | |
| **Defendants.** | § | **Referred to U.S. Magistrate Judge**[1] |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Before the Court for recommendation is *Defendants' Motion to Dismiss Original Petition and Brief in Support*, filed July 26, 2019 (doc. 6). Based on the relevant filings and applicable law, the motion should be **GRANTED**.

## I. BACKGROUND

This case involves the attempted foreclosure of real property located at 153 Meadowcreek Road, Coppell, Texas 75019 (the Property). (doc. 1-3 at 3-8.)[2] On December 2, 2003, Plaintiff executed a Texas Home Equity Fixed/Adjustable Rate Note (Note) in favor of New Century Mortgage Corporation, for a loan in the principal amount of $432,000.00. (doc. 1-3 at 3-4.) He contemporaneously executed a Texas Home Equity Security Instrument (Security Instrument) that

---

[1] By *Special Order No. 3-251*, this case was automatically referred for full case management, including the determination of non-dispositive motion and issuance of findings of fact and recommendations on dispositive motions.

[2] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

granted a security interest against the Property to secure repayment under the Note.  (doc. 6 at 2.) The Note and Security Instrument (collectively the Loan Agreement) were eventually assigned to Wells Fargo Bank, NA, as Trustee for the Pooling and Servicing Agreement dated as of April 1, 2004 Asset-Backed Securities Corporation Home Equity Loan Trust 2004-HE2 Asset-Backed Passthrough Certificates Series 2004-HE2 (Wells Fargo). (*Id.*)

In early 2007, Plaintiff alleges that he "had fallen into a state of delinquency with regard to payments on the [Note]." (doc. 1-3 at 6.)  In April 2007, Plaintiff and Wells Fargo allegedly reached an agreement "whereby [Plaintiff's] delinquency of the [Note] was cured and [it] was deemed to be current as of April 30, 2007, . . . as a result of payments by [Plaintiff] (over a set period of time) equal to over $75,000.00." (*Id.* at 6-7.)  He submitted the payments under the agreement between April and August of 2007,[3] but his last payment of $8,770.03 was "inexplictly refused" and returned to him.  (*Id.* at 7.)  On or about October 8, 2007, Wells Fargo notified Plaintiff that he was "$81,910.72 in default under the [Note]." (*Id.* at 7-8.)

In Fall 2011, the Property's roof was damaged in a hail storm, and Wells Fargo and Ocwen Loan Servicing, LLC (Ocwen) (collectively, Defendants) received $9,500.00 from the Property's insurance provider "to pay for the roof damage caused by the hail."  (*Id.* at 8.)  When Plaintiff inquired about the insurance payment, Defendants informed him that "the Damage Payment would not be used to repair the damaged roof of the [Property], but instead would be applied to [his] past due amounts."  (*Id.*) He alleges that none of those funds was applied to the Note, but instead held in a "slush fund."  (*Id.*)

Plaintiff claims that "Defendants plan to proceed with a foreclosure sale of the [Property]."

---

[3]He submitted payments of $40,000 in April 2007; $8,716.61 in May 2007; $8,770.03 in June 2007; $8,770.03 in July 2007; and $8,770.03 in August 2007. (doc. 1-3 at 7.)

(*Id.* at 10.)  He alleges that the most recent intent to accelerate letter "does not set forth a proper cure amount" and "unlawfully asserts that [he] could be personally liable and responsible for unpaid portions of the amount allegedly due under the [Loan Agreement]." (*Id.* at 9.)  He contends that his monthly payments on January, February, and March of 2004, totaling $8,470.56, were never applied to the Note. (*Id.*)

On June 13, 2019, Plaintiff filed this suit against Defendants in the 193rd District Court of Dallas County, Texas. (doc. 1-1 at 1.)  He asserts claims for breach of contract, conversion and misappropriation, and usury, and seeks actual damages, attorney's fees, and injunctive and declaratory relief to restrain Defendants from foreclosing on the Property. (*Id.* at 9-13.)

On July 12, 2019, Defendants removed this action to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (doc. 1-1 at 2.)  On July 26, 2019, Defendants moved to dismiss Plaintiff's complaint, (doc. 6) but Plaintiff did not respond.  This motion is ripe for recommendation.

## II. RULE 12(b)(6) MOTION

Defendants move to dismiss Plaintiff's claims against them under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (doc. 6.)

### A.  Legal Standard

Rule 12(b)(6) allows motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  Under the 12(b)(6) standard, a court cannot look beyond the face of the pleadings. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999), *cert. denied*, 530 U.S. 1229 (2000).

Pleadings must show specific, well-pleaded facts, not mere conclusory allegations to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The court must accept

those well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker*, 75 F.3d at 196. "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (quotation marks omitted). Nevertheless, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555; *accord Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasizing that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). The alleged facts must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (citations omitted). When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

**B.** **<u>Breach of Contract</u>**

Defendants argue that Plaintiff has insufficiently pled all the elements of his breach of contract claim on the Loan Agreement, and his claim concerning an agreement to cure his default is barred by the statute of frauds. (doc. 6 at 4-5.)

The essential elements of a breach of contract claim in Texas[4] are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc*., 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.–Houston [14th Dist.] 2005, pet. denied)).  "A breach occurs when a party fails or refuses to do something he has promised to do."  *Dorsett v. Cross*, 106 S.W.3d 213, 217 (Tex. App.—Houston [1st Dist.] 2003, pet. denied).

### 1.    *Loan Agreement*

Plaintiff alleges that Defendants breached the Loan Agreement "by charging a rate of interest greater than the rates agreed upon by [Plaintiff]."  (doc. 1-3 at 10.)  He contends that the "breach related to the improper charging of interest, . . . has occurred as recently as April 2019." (*Id.*)

The complaint fails to allege that Plaintiff tendered full performance by making the required payments under the Loan Agreement; it states that Plaintiff "had fallen into a state [of] delinquency with regard to payments on the [Note]." (*Id.* at 6); *see Kiper v. BAC Home Loans Servicing, LP*, 884 F. Supp.2d 561, 575 (S.D. Tex. 2012), *aff'd by* 534 F. App'x 266 (5th Cir. 2013) (holding that plaintiff's wife (the actual borrower) had "defaulted on her obligation to repay the mortgage loan, which mean[t] [plaintiff] [could not] show the second element of a breach of contract claim, performance by plaintiff").  Because the complaint concedes that he failed to tender performance

_____

[4]"It is a long-recognized principle that federal courts sitting in diversity cases 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assoc., P.A., v. Allstate Ins. Co.*, 559 U.S. 393, 417 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465 (1965)).  Here, the Loan Agreement and Cure Agreement were allegedly executed in Texas, and the Property is located in Texas. (*See* doc. 1-3 at 4-5.); *see De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1413 (5th Cir. 1995) (quoting *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984) ("[T]he law of the state with the most significant relationship to the particular substantive issue will be applied to resolve that issue."); *see also Faloona by Fredickson v. Hustler Magazine, Inc.*, 799 F.2d 1000, 1003 (5th Cir. 1986) (citing *Duncan*, 665 S.W.2d at 421) (contacts to take into account in determining the applicable law include the place of contracting and place of performance).  The parties do not dispute that Texas law applies.

5

as required under the Loan Agreement, Plaintiff is unable to state a claim for breach of the Loan Agreement, and it should be dismissed. *See Williams v. Wells Fargo Bank*, N.A., 560 F. App'x 233, 238 (5th Cir. 2014) (holding that when "plaintiffs fail to allege they were current on their payments under the deed of trust, dismissal of their breach of contract claim is proper").

### 2.    *Cure agreement*

Plaintiff alleges that he fulfilled his obligations under the parties' agreement to cure the default, but Defendants "effectively repudiated" it when they returned his August 2007 payment. (doc. 1-3 at 11.)  He claims they breached the agreement when they "began foreclosure efforts against [the Property]." (*Id.*)

The existence of a valid contract is an "essential element[ ] in a breach of contract claim" under Texas law.  *Bridgmon v. Array Sys. Corp.*, 325 F.3d 572, 577 (5th Cir. 2003) (citation omitted). To show the existence of a contract, a plaintiff must establish, *inter alia*, an offer, "an acceptance in strict compliance with the terms of the offer," and a meeting of the minds. *Southern v. Goetting*, 353 S.W.3d 295, 299 (Tex. App.—El Paso 2011, reh'g denied).  Under Texas law, a "loan agreement in which the amount involved in the loan agreement exceeds $50,000 in value is not enforceable unless the agreement is in writing and signed by the party to be bound or by that party's authorized representative." Tex. Bus. & Com. Code § 26.02(b).  The term "loan agreement" includes any agreement or promise where a financial institution "loans or delays repayment of or agrees to loan or delay repayment of money, goods, or another thing of value or to otherwise extend credit or make a financial accommodation."  *Id.* at § 26.02(a)(2); *see Gordon v. JPMorgan Chase Bank, N.A.*, 505 F. App'x 361 (5th Cir. 2013).  This means that an agreement for a loan modification under a mortgage agreement exceeding $50,000.00 is subject to the Texas Statute of Frauds and

must be in signed writing to be enforceable. *See Milton v. U.S. Bank Nat. Ass'n*, 508 F. App'x 326, 328 (5th Cir. 2013) (collecting cases); Tex. Bus. & Com. Code § 26.02(a), (b).

Here, Plaintiff alleges that he reached an agreement with Wells Fargo that his payments totaling $75,000.00 would cure the delinquency of the Note.  (doc. 1-3 at 4-6.)  Notably, he does not contend that the alleged cure agreement was reduced to writing. *See* Tex. Bus. & Com. Code § 26.02(b); *see also Milton*, 508 F. App'x at 328-29 (holding that "plaintiff's breach of contract claim [was] barred by the statute of frauds" "because there was no written agreement to delay [the] foreclosure" while her application for a loan modification was reviewed).  He also fails to allege any facts indicating that an exception to the statute of frauds applies here. *See Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 759 (N.D. Tex. 2012) (dismissing plaintiff's "claim for breach of a promise to modify" where the promise was barred by the statute of frauds and no exception applied).  Accordingly, any claim for breach of the cure agreement should be dismissed for failure to state a claim.

## C.    **Conversion**

Defendants argue that the conversion claim should be dismissed because Plaintiff fails to properly assert the elements of conversion, or to define a specific chattel subject to conversion. (doc. 6 at 6.)

To establish a claim for conversion under Texas law, a plaintiff must show that the defendant wrongfully exercised dominion or control over the property of the plaintiff to the exclusion of, or inconsistent with, the plaintiff's right of possession. *See 50–Off Stores, Inc. v. Banques Paribas (Suisse)*, 180 F.3d 247, 253 (5th Cir. 1999); *see also Robinson v. Nat'l Autotech, Inc.*, 117 S.W.3d 37, 39 (Tex.App.–Dallas 2003, pet. denied).  "Texas jurisprudence holds that money can be the

subject of conversion, but only when it is in the form of specific chattel, such as old coins, or when 'the money is delivered to another party for safekeeping, the keeper claims no title, and the money is required and intended to be segregated, either substantially in the form in which it was received or as an intact fund.' " *Mitchell Energy Corp. v. Samson Res. Co.*, 80 F.3d 976, 984 (5th Cir. 1996) (quoting *Dixon v. State*, 808 S.W.2d 721, 723 (Tex.App.—Austin 1991, writ dism'd w.o.j.)). Examples of money as a specific chattel include funds "delivered for safe keeping" or money "intended to be kept segregated." *Hill v. Anderson*, 420 F. App'x 427, 435 (5th Cir. 2011). A cause of action for conversion of money fails "when the plaintiff cannot trace the exact funds claimed to be converted, making it impossible to identify the specific monies in dispute." *Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc.*, 438 F. Supp. 2d 696, 707 (citing *Ins. Co. of N. Am. v. Hickman*, 2000 WL 1207138, at *4 (Tex. App.—Dallas Aug. 25, 2000, no pet.)). "When an indebtedness can be discharged by payment of money generally, an action in conversion is inappropriate." *Edlund v. Bounds*, 842 S.W.2d 719, 727 (Tex. App.—Dallas 1992, writ denied) (citation omitted).

Here, Plaintiff alleges that Defendants "converted and misappropriated over $85,000" from him. (*See* doc. 1-3 at 12.) He fails to allege facts which give rise to a reasonable inference that the $85,000 converted by Defendants is specific chattel, however. There are no allegations tracing the exact funds being converted and misappropriated, nor stating that this money was delivered for safekeeping or intended to be kept segregated. *See Mitchell Energy Corp.,* 80 F.3d at 984. Rather, the disputed amount "is properly characterized as an alleged amount of indebtedness capable of being discharged by the payment of money generally." *Taylor Pipeline Constr., Inc.*, 438 F. Supp. 2d at 708.; *see Gronberg v. York*, 568 S.W.2d 139, 144–45 (Tex.Civ.App.—Tyler 1978, writ ref'd

n.r.e.) (finding compensation owed under an employment contract did not give rise to a conversion claim when plaintiff did not seek the return of specific money but was only seeking repayment of money generally).  Accordingly, Plaintiff's conversion claim should be dismissed for failure to state a claim.

**D.**     **Usury**

Defendants argue that Plaintiff fails to allege a viable usury claim because he does not specify the theory under which he seeks relief, the elements of such a theory, or state how they violated the elements. (*See* doc. 6 at 7.)

Under Texas law, "contracting for, charging, or receiving interest that is greater than the statutory maximum is contrary to public policy, and creditors that charge usurious interest are subject to penalties." *Express Working Capital, LLC v. Starving Students, Inc.*, 28 F. Supp. 3d 660, 665 (N.D. Tex. 2014) (citing Tex. Fin. Code §§ 302.001(c), 305.001).  Usurious interest is defined as "interest that exceeds the applicable maximum allowed by law." Tex. Fin. Code § 301.002(a)(17).  In Texas, "the maximum legal rate of interest is 18%." *Bernie's Custom Coach of Texas, Inc. v. Small Bus. Admin.,* 987 F.2d 1195, 1197 (5th Cir. 1993); *Threlkeld v. Urech*, 329 S.W.3d 84, 89-90 (Tex. App.—Dallas 2010, pet. denied); *see* Tex. Fin. Code § 303.009(a).  A usury claim has three elements: (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower. *See First Bank v. Tony's Tortilla Factory, Inc.,* 877 S.W2d 285, 287 (Tex. 1994); *C.C. Port, Ltd. v. Davis-Penn Mortg. Co.*, 61 F.3d 288, 289 (5th Cir. 1995).  As a general rule in Texas, the party alleging the usury claim must specifically allege the date of payment of usurious interest, the party to whom payments were made, and the amount paid. *See W. Bank & Tr. Co. v. Ogden*, 42 Tex. Civ.

App. 465, 469, 93 S.W. 1102, 1104 (1906, no writ); *Easley v. Gill*, 77 S.W.2d 268, 271 (Tex. Civ. App.—Eastland 1934, writ dism'd).

Here, Plaintiff alleges that Defendants charged him an interest amount greater than agreed under the Note "as recently as April 2019." (*See* doc. 1-3 at 12-13.)  He also alleges that the balance owed under the Note is usurious because it is "150% higher" than the original loan amount.  (*Id.* at 6.)  Plaintiff fails to allege facts demonstrating the Note's interest rate, let alone that it was usurious. Even though the outstanding loan balance is allegedly 150% higher than the value of the Note, it does not determine the amount of interest that Defendants charged at any point in time throughout the term of the Note.  *See cf. Swank v. Sverdlin*, 121 S.W.3d 785, 791 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (recognizing that other obligations owed under a loan may include fees and expenses, which "are not interest and thus do not violate the usury law").  While Plaintiff claims he was *charged* an unlawful interest amount "as recently as April 2019," he does not identify the specific date, payment recipient, or amount he actually *paid* under the usurious rate.  *See W. Bank & Trust Co.*, 93 S.W. at 1102; *see, e.g., Johnson v. Citigroup Mortgage Loan Tr. Inc.*, 5:16-CV-1114-RCL, 2017 WL 3337268, at *12-13 (W.D. Tex. Aug. 3, 2017) (dismissing usury claim because plaintiff "failed to allege that defendants exacted a greater compensation than allowed by law—an essential element to a usury claim—because there is no allegation that [plaintiff] actually paid under the usurious rate.")  Further, his claim that the interest rate charged was greater than agreed under Note is insufficient to show that the interest rate exceeded what is allowed by law. Because Plaintiff has failed to plead sufficient facts to show that he paid interest to Defendants greater than the statutory maximum, his usury claim should be dismissed for failure to state a claim. *See Tony's Tortilla Factory, Inc.,* 877 S.W2d at 287.

D.    **Declaratory Judgment**

Defendants construe Plaintiff's "request barring foreclosure" as a request for declaratory judgment and argue that it should be dismissed because he has failed to show that an actual controversy exists between the parties. (doc. 6 at 9.)

"When a declaratory judgment action is filed in state court and is subsequently removed to federal court, it is converted to one brought under the federal Declaratory Judgment Act [DJA]." *Bell v. Bank of Am. Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755, at *8 (S.D. Tex. Feb. 21, 2012). The DJA "does not create a substantive cause of action" and "is merely a vehicle that allows a party to obtain an early adjudication of an actual controversy arising under other substantive law." *MetroPCS Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:03-CV-1658-D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (citations and internal quotation marks omitted). It is an authorization, not a command, and gives federal courts broad, but "not unfettered," discretion to grant or refuse declaratory judgment. *Id.*

Here, Plaintiff "requests a ruling that forever bars Defendants, or anyone else, from ever foreclosing upon [the Property] under the [Note]." (doc. 1-3 at 14.) He alleges that the Note is void because Defendants violated the Texas Constitution by "entering into a home equity loan in an amount greater than the value based ratio allowed," charging excess closing costs, holding him personally liable for the Note, and charging an amount of interest under the Note that doubles the amount he paid for the home. (*Id.* at 13-14.) While the complaint does not identify specific provisions of the Texas Constitution that Defendants allegedly violated, it appears to refer to Article

11

XVI, § 50(a) of the Texas Constitution.[5]

Section 50(a) of the Texas Constitution "has long protected the homestead, strictly limiting the types of loans that may be secured by a homestead lien." *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 545 (Tex. 2016). These limitations do not create an independent constitutional right, however. *See Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 478 (Tex. 2016). While borrowers may assert constitutional violations "as a defense to foreclosure actions brought by lienholders or by filing their own substantive cause of action, such as a breach of contract or a quiet title action," the Texas Constitution does not create a separate right of action for asserting defective liens. *Johnson v. Citigroup Mortg. Loan Tr. Inc.*, No. 5:16-CV-1114-RCL, 2017 WL 3337268, at *8-9 (W.D. Tex. Aug. 3, 2017) (citing *Wood*, 505 S.W.3d at 546; *Garofolo*, 497 S.W.3d at 478, 484). A plaintiff therefore does not state a claim merely by alleging constitutional violations of § 50(a), and he instead must plead such violations in the context of a substantive cause of action. *Id.* at *10; *see also Rodriguez v. Deutsche Bank Nat'l Tr. Co.*, No. CV H-16-1597, 2017 WL 4890023, at *3 (S.D. Tex. Oct. 30, 2017) (citing *Alexander v. Wells Fargo Bank, N.A.*, 867 F.3d 593, 602 (5th Cir. 2017)) (noting that "[a]lthough Section 50(a) does not create an independent cause of action, a borrower can sue its lender for violations of that section under a breach of contract theory" or suit to quiet title).

Because Plaintiff's complaint does not allege constitutional violations in the context of a substantive cause of action, he cannot obtain declaratory relief on this basis as a matter of law. *See*

---

[5]Section 50(a)(6) places numerous restrictions on home mortgages. In particular, subsection 50(a)(6)(B) prohibits loans that, when added to the principal balances of all other liens, exceed 80 percent of the home's fair market value. Tex. Const. Ann. art. XVI, § 50(a)(6)(B). Subsection 50(a)(6)(E) prohibits a lender from charging more than two percent (2%) of the principle for any fee necessary to "originate, evaluate, maintain, record, insure, or service the extension of credit." *Id.* § 50(a)(6)(E); *see generally* Tex. S.J. Res. 60, 85th Leg., R.S., 2017 (amending the chargeable rate from three percent to two percent).

*Wood*, 505 S.W.3d at 546; *Garofolo*, 497 S.W.3d at 478.  His request for declaratory judgment should be denied. *See Bell*, 2012 WL 568755, at *8 (denying the plaintiff's request for declaratory judgment where she had alleged no facts leading to a conclusion that a present controversy existed between her and the defendant); *Turner v. AmericaHomeKey, Inc.*, No. 3:11-CV-0860-D, 2011 WL 3606688, at *5-6 (N.D. Tex. Aug. 16, 2011), *aff'd by* 2013 WL 657772 (5th Cir. Feb. 22, 2013) (declining to entertain the plaintiff's request for declaratory judgment where he had not pleaded a plausible substantive claim).

**E.    <u>Injunctive Relief</u>**

Defendants alternatively construe Plaintiff's "request barring foreclosure" as a request for injunctive relief, and argue that it should be dismissed because his underlying claims "fail as a matter of law and fact." (doc. 6 at 8.)

"To obtain injunctive relief, [a] plaintiff is required to plead and prove, *inter alia*, 'a substantial likelihood of success on the merits.'" *Jackson v. Fed. Home Loan Mortg. Corp.*, No. 4:11-CV-507-A, 2011 WL 3874860, at *3 (N.D. Tex. Sept. 1, 2011) (citing *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996)).  Because Plaintiff's substantive claims are subject to dismissal on the merits, he cannot establish any likelihood of success on the merits. *See Jackson*, 2011 WL 3874860, at *3.  Accordingly, his request for injunctive relief should be denied.

### III. OPPORTUNITY TO AMEND

Notwithstanding a plaintiff's failure to plead sufficient facts, "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are willing or unable to amend in a manner that will avoid dismissal."  *In re Am. Airlines, Inc., Privacy Litig.*, 370 F.

13

Supp. 2d 552, 567-68 (N.D. Tex. 2005) (citing *Great Plains Trust Co. V. Morgan Stanley Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  Nevertheless, courts may appropriately dismiss an action with prejudice without giving an opportunity to amend when the plaintiff fails to respond, and the plaintiff has had ample opportunity to amend the complaint.  *See Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995) (noting passage of 327 days).  Dismissal with prejudice is also appropriate if a court finds that the plaintiff has alleged his or her best case.  *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999).

Here, although Plaintiff has not amended his complaint since filing this action, he failed to file a response to the motion to dismiss after being specifically invited to do so.  (*See* doc. 7.) Nevertheless, it does not appear that Plaintiff has stated his best case with respect to any of his claims.  He should accordingly be offered an opportunity to amend his complaint to sufficiently state a claim for relief.

## IV. RECOMMENDATION

If Plaintiff does not file an amended complaint within the 14 days allowed for objections to this recommendation, or a deadline otherwise set by the Court, Defendants' motion to dismiss should be **GRANTED**, and all Plaintiff's claims against them should be dismissed with prejudice. If Plaintiff timely files an amended complaint, however, Defendants' motion to dismiss should be **DENIED as moot**, and the action should be allowed to proceed on the amended complaint.[6]

---

[6]Defendants also seek to dismiss Plaintiff's claims for breach of contract and conversion as barred by the statute of limitations. (*See* doc. 6 at 3-4)  Because these claims are otherwise subject to dismissal, it is unnecessary to reach this argument. *See Gipson v. Deutsche Bank Nat'l Tr. Co.*, No. 3:13-CV-4820-L, 2015 WL 11120538 at n. 21 (N.D. Tex. Oct. 27, 2015).

**SO RECOMMENDED on this 29th day of January, 2020.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE